Jose **GOMEZ**, Plaintiff–Appellant,

v.

**DEPARTMENT OF THE AIR FORCE, Etc., et al., Defendants–Appellees.**

**No. 88–5588**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

April 10, 1989.

Shelby W. Hollin, San Antonio, Tex., for plaintiff-appellant.

Harold O. Atkinson, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., and Deanna M. Tuley, Washington, D.C., for defendants-appellees.

Before RUBIN, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Jose Gomez (Gomez) appeals from the district court's dismissal of his complaint against defendant-appellee Edward C. Aldridge, Secretary, Department of the Air Force (the Air Force). The district court held that Gomez's suit was untimely because filed outside the thirty-day limitations period prescribed for his national origin discrimination complaint. 42 U.S.C. § 2000e–16(c); *Bell v. Veterans Admin. Hospital,* 826 F.2d 357 (5th Cir. 1987). We find that Gomez's claim was governed by the 180-day "no final agency action" provision of 42 U.S.C. § 2000e–16(c), *see also* 5 U.S.C. § 7702(e)(1)(C), rather than the thirty-day limitations period, and accordingly we reverse and remand for further proceedings consistent herewith.

### Facts and Proceedings Below

Gomez was a civilian employed by the Air Force as a WG–9 painter. In the spring of 1985, the Air Force initiated action to remove Gomez from his job for failure to meet the physical requirements of a WG–9 painter. On June 27, 1985, Gomez was officially removed from his employment. Gomez appealed his dismissal to the Merit Systems Protection Board (the Board) alleging discrimination based on national origin in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

(1976), and handicap (hypersensitivity to paint fumes) in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (1976). Because Gomez's action was filed subsequent to passage of the Civil Service Reform Act, 5 U.S.C. § 7701 *et seq.* (1978), it is governed by the provisions of that Act. In addition, EEOC regulations, 29 C.F.R. § 1613.414 *et seq.* (1987), are pertinent to the present action.

The Board issued an initial decision in Gomez's case on October 28, 1985. The Board sustained Gomez's dismissal, concluding that Gomez had not established a *prima facie* case of discrimination on either his national origin claim or his handicap claim. Gomez filed a petition for review, and on February 20, 1986, the Board denied Gomez's petition.

On March 25, 1986, Gomez filed a petition for review with the Equal Employment Opportunity Commission (EEOC). On December 21, 1987, more than one-and-one-half years after Gomez's petition was filed with the EEOC, the EEOC concurred with the Board on the national origin issue but was unable to concur or differ with the Board on the handicap issue.[1] The EEOC then "refer[red] the case to the Board for additional information or the taking of additional evidence on the issue of handicap discrimination." On the same day, December 21, 1987, the EEOC issued Gomez a Notice of Right to Sue letter.[2]

On December 28, 1987, Gomez received the EEOC decision and the Right to Sue letter. On January 28, 1988, thirty-one days after receiving the Right to Sue letter, Gomez submitted his complaint[3] to the

1. The EEOC decision addresses in detail the events and proceedings surrounding Gomez's dismissal from employment. Apparently, Gomez had developed a sensitivity to the paint chemicals that he utilized in his job. One doctor reported that Gomez had been exposed to numerous chemicals during his six-year tenure as an Air Force painter and that Gomez had experienced "severe headaches, chest tightness, flushing, dizziness and a rash around his face and eyes as well as conjunctivitis whenever he was exposed to these chemicals."

Gomez was found medically unqualified for the painter position on March 11, 1985. At the same time the Air Force initiated a search for another position that Gomez would be able to perform. An employee relations specialist for the Air Force testified that the Air Force looked for three to four months for a suitable job for Gomez. Apparently, Gomez interviewed for a dispatcher position and a supply clerk position, but for various reasons he received neither job.

Gomez argued that the Air Force discriminated against him because "Anglo" employees were allowed to interview and train for other positions and he was not so permitted. The EEOC found that Gomez provided no evidence to support his bare assertion of disparate treatment based on national origin and "concur[red] with the Board in its finding that petitioner has failed to establish a prima facie case of discrimination based upon national origin."

The EEOC also found that the record was incomplete on the issue of handicap discrimination and, therefore, the EEOC was *"unable to concur or differ* with the ... final decision of the Merit Systems Protection Board." (Emphasis added). The EEOC then remanded that issue to the Board for additional evidence.

The conclusion of the EEOC opinion stated that the EEOC "concur[red] with that part of the

final decision of the Board which found petitioner's removal was not based on national origin discrimination. The Commission refers the case to the Board for additional information or the taking of additional evidence on the issue of handicap discrimination...."

2. The Right to Sue letter informed Gomez that if the EEOC had concurred in the decision of the Board then the decision of the EEOC would be final and Gomez had thirty days to file a civil action in federal court. 29 C.F.R. § 1613.421(c) and (d).

The letter went on to state that if the EEOC had not concurred with the decision of the Board then his case would be referred to the Board for further consideration. Gomez would then have the right to file a civil action in federal court, either (1) thirty days after receiving notice that the Board concurred with the EEOC decision (29 C.F.R. § 1613.421(e)) or (2) if the Board reaffirmed its original decision, then within thirty days of notice that the Special Panel (to which Gomez' case would be referred if the Board reaffirmed its original decision), had taken final action, 29 C.F.R. § 1613.421(f), or (3) 180 days after filing a petition with the EEOC if the Board or Special Panel had not reached a final decision. *See* 29 C.F.R. § 1613.421.

As Gomez aptly points out, the Right to Sue letter did not clearly address what to do when the EEOC had concurred in part of the Board's decision and had not concurred nor differed with another part of the Board's decision.

3. Gomez submitted his complaint to the district court clerk's office on January 28, 1988. At the same time, he filed a request for appointment of counsel and a motion to proceed *in forma pauperis.* The motion to proceed *in forma pauperis*

district court alleging discrimination on the basis of national origin.[4] The Air Force moved to dismiss for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), because Gomez had failed to file his action, as required by 42 U.S.C. § 2000e–16(c), within thirty days of the EEOC's allegedly final decision on his national origin claim. The district court granted the Air Force's motion to dismiss and Gomez filed a timely appeal.

## Discussion

### I. *The Statutory and Regulatory Framework*

In 1978, Congress passed the Civil Service Reform Act to enable most federal employees to appeal adverse employment decisions to the Board. 5 U.S.C. § 7701 *et seq.* Section 7702 of Title V provides the skeletal procedural framework for employees, like Gomez, who may appeal an adverse agency action to the Board and who allege that a basis for their action is dis-

crimination.[5] Section 7703(b)(2) of Title V clearly states that cases of national origin discrimination, subject to section 7702, are to be filed under Title VII, 42 U.S.C. § 2000e–16(c).[6] *See* 5 U.S.C. § 7703(b)(2). Gomez's handicap discrimination claim would also be subject to Title VII if it were raised in federal court. 29 U.S.C. § 794a(a)(1) (Supp. III 1979); *see also Wiggins v. United States Postal Service,* 653 F.2d 219, 220 (5th Cir.1981) (stating that when claimant relies on section 501 of the Rehabilitation Act he must seek review of the Board's decision by filing in accordance with Title VII, 42 U.S.C. § 2000e–16(c)).

In addition to the statutory framework, there are EEOC regulations that flesh out the procedures used in an appeals case involving an action appealable to the Board that contains a claim of discrimination. 29 C.F.R. § 1613.401 *et seq.* Such cases, like Gomez's case, are referred to as "mixed cases."[7] A mixed case may contain only

was denied on March 30, 1988. On April 18, 1988, Gomez paid his filing fees and he filed an amended complaint on April 21, 1988.

4. From the record, it appears that Gomez is still pursuing his handicap discrimination claim through the administrative channels. We are unable to discern with certainty where the handicap claim is in the appeals process, although it appears that the EEOC is still awaiting the supplemental evidence on the handicap claim. *See* 29 C.F.R. § 1613.421(c) and (d).

5. Section 7702(a)(1) provides as follows:
   "**§ 7702. Actions involving discrimination**
   "(a)(1) Notwithstanding any other provision of law, ... in the case of any employee or applicant for employment who—
   "(A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board and
   "(B) alleges that a basis for the action was discrimination prohibited by—
   "(i) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16),
   "(ii) section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)),
   "(iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791),
   "(iv) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), or
   "(v) any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph,

"the Board shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section."

6. Section 7703(b)(2) provides as follows:
   "Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable." 5 U.S.C. § 7703(b)(2).
   Additionally, the relevant EEOC regulations are pursuant to the authority of the Civil Rights Act, 42 U.S.C. § 2000e–16(c), the Rehabilitation Act, 29 U.S.C. §§ 791, 794a, the Age Discrimination in Employment Act, 29 U.S.C. § 633a, and the Fair Labor Standards Act, 29 U.S.C. § 206(d). *See* 29 C.F.R. § 1613, Subpart D.

7. The relevant definitions are found at 29 C.F.R. § 1613.402, as follows:
   "(a) *Mixed Case Complaint.* A mixed case complaint is: (1) A complaint of employment discrimination filed with a federal agency, based on race, color, religion, sex, national origin, handicap, age, and/or reprisal, related to, or stemming from an action taken by an agency against the complainant, which action may be appealed to the MSPB, pursuant to

an allegation of employment discrimination or it may contain additional nondiscrimination claims that are within the jurisdiction of the Board, but regardless of whether it contains solely discrimination claims or both discrimination and nondiscrimination claims, it must be based on an adverse agency action that is appealable to the Board.[8] 29 C.F.R. §§ 1613.402(a) and (b); *see also Williams v. Department of the Army*, 715 F.2d 1485, 1487 n. 3 (Fed.Cir. 1983); *Christo v. Merit Systems Protection Board*, 667 F.2d 882, 883, 884 n. 1 (10th Cir.1981). The detailed procedures for mixed cases are set out at 29 C.F.R. § 1613 *et seq.*[9]

After Gomez received the Board's adverse decision, he submitted a petition for review with the EEOC. Once the EEOC decides to consider a petition, which they did in Gomez's case, the regulations provide that the EEOC shall consider the entire record, as supplemented by the Board if the EEOC refers the case to the Board for the taking of additional evidence, before rendering a decision. 29 C.F.R. § 1613.416(c) and (d). After considering the entire record, the regulations state that the EEOC will take one of two actions; the EEOC will either: (1) concur with the Board's decision, or (2) issue a decision in writing that differs with the Board's decision.[10] If the EEOC concurs with the Board's decision, then the claimant has thirty days from receiving notice of the concurrence to appeal to the district court. 29 C.F.R. § 1613.421(d). If the EEOC differs from the Board's decision, then the case is returned to the Board for another layer of administrative appeals.[11] 29 C.F.R. §§ 1613.416–.420.

any law, rule or regulation.... The complaint may contain only an allegation of employment discrimination or it may contain additional allegations which the MSPB has jurisdiction to address.

"(b) *Mixed Case Appeals.* A mixed case appeal is an appeal filed with the MSPB, which jurisdiction to entertain, and which alleges that the agency action which forms the basis for the appeal was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap, age and/or reprisal...."

8. Actions that are appealable to the Board are listed in 5 U.S.C. § 7512. These adverse agency actions include: removal, suspension for more than fourteen days, a reduction in grade, a reduction in pay, and a furlough of thirty days or less. 5 U.S.C. § 7512 (1980).

9. Initially, Gomez could have chosen to file a complaint with the appropriate agency (Air Force) or to appeal directly to the Board. 29 C.F.R. § 1613.403. Gomez appealed directly to the Board. After the Board reached its final decision on February 20, 1986, Gomez could have appealed the decision to the district court within thirty days of receiving notice of the Board's decision or he could have elected the administrative route and appealed to the EEOC. 29 C.F.R. §§ 1613.421(b), 1613.414(a).

10. Sections 1613.416(c) and (d) provide as follows:

"(c) If the Commission makes a determination to consider the decision, the Commission shall within sixty (60) calendar days after the date of its determination, consider the entire record of the proceedings of the Merit Systems Protection Board and on the basis of the evidentiary record before the Board as supplemented in accordance with paragraph (d) of this section, either:

"(1) Concur in the decision of the Merit Systems Protection Board, or

"(2) Issue in writing a decision which differs from the decision of the Merit Systems Protection Board to the extent that the Commission finds that, as a matter of law:

"(i) The decision of the Merit Systems Protection Board constitutes an incorrect interpretation of any provision of any law, rule, regulation, or policy directive referred to in 5 U.S.C. 7702(a)(1)(B) or (ii) the decision involving such provision is not supported by the evidence in the record as a whole.

"(d) In considering any decision of the Merit Systems Protection Board, the Commission pursuant to 5 U.S.C. 7702(b)(4), may refer the case to the Merit Systems Protection Board for the taking ... of additional evidence or provide on its own for the taking of additional evidence to the extent the Commission considers it necessary to supplement the record." 29 C.F.R. §§ 1613.416(c) and (d).

11. The Board, upon receiving a decision of the EEOC that differs from the Board's original decision, decides either to concur with the EEOC decision or reaffirm its original decision. If the Board concurs with the EEOC decision, then the administrative route is exhausted. If the Board reaffirms its original decision, then the case is sent to the Special Panel. When the Special Panel reaches a decision, the administrative route is exhausted. *See* 29 C.F.R. § 1613.416–.420. It is clear that the EEOC has not issued an opinion that differs with the Board's decision in Gomez' case.

█ Depending on the type of administrative decision or on a lack of administrative decision, a claimant has the right, at various times, to file a civil action in federal district court.[12] If the EEOC concurred with the Board's decision, then Gomez had thirty days to file in federal court. 29 C.F.R. § 1613.421(d). But if there has been no final decision by the EEOC, the Board, or the Special Panel (*see* note 11, *supra*), after 180 days from the filing of Gomez's petition with the EEOC, then Gomez has timely filed suit in federal court. 29 C.F.R. § 1613.421(i). The regulations' 180–day "no decision" provision appears to be a poorly worded and truncated version of a similar provision in Title VII, 42 U.S.C. § 2000e–16(c), *see also* Civil Service Reform Act, 5 U.S.C. § 7702(e)(1)(C).[13] It is

12. Section 1613.421 provides as follows:

"§ 1613.421 Right to file a civil action.

"An individual [claimant] is authorized by 5 U.S.C. 7702, to file a civil action based on the decision of the Merit Systems Protection Board in an appropriate U.S. District Court:

"(a) Within thirty (30) calendar days of receipt of notice of the final action taken by an agency on a complaint unless an appeal is filed with the Merit Systems Protection Board; or

"(b) Within thirty (30) calendar days of receipt of notice of the final decision or action taken by the Merit Systems Protection Board if the individual does not file a petition for consideration with the EEOC; or

"(c) Within thirty (30) calendar days of receipt of notice that the Commission has determined not to consider the decision of the Merit Systems Protection Board; or

"(d) Within thirty (30) calendar days of receipt of notice that the Commission concurs with the decision of the Merit Systems Protection Board; or

"(e) If the Commission issues a decision different from the decision of the Merit Systems Protection Board, within thirty (30) calendar days of receipt of notice that the Merit Systems Protection Board concurs in and adopts in whole the decision of the Commission; or

"(f) If the Merit Systems Protection Board does not concur with the decision of the Commission and reaffirms its initial decision or reaffirms its initial decision with a revision, within thirty (30) calendar days of the receipt of notice of the decision of the Special Panel; or

"(g) After one-hundred and twenty (120) calendar days from the date of filing a formal complaint if there is no agency action or appeal to the Merit Systems Protection Board; or

"(h) After one-hundred and twenty (120) calendar days from the date of filing an appeal with the Merit Systems Protection Board if the Merit Systems Protection Board has not yet made a decision; or

"(i) After one-hundred and eighty (180) calendar days from the date of filing a petition for consideration with the Commission if there is no decision by the Commission, reconsideration decision by the Merit Systems Protection Board or decision by the Special Panel." 29 C.F.R. § 1613.421.

13. Title VII provides as follows:

"(c) Within thirty days of receipt of notice of final action taken by a department, agency, or unit ... or by the Equal Employment Opportunity Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, ... or after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit or with the Equal Employment Opportunity Commission on appeal from a decision or order of such department, agency, or unit until such time as final action may be taken by a department, agency, or unit, an employee or applicant for employment, if aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint, may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U.S.C. § 2000e–16(c).

The Civil Service Reform Act provides that,

"(e)(1) Notwithstanding any other provision of law, if at any time after—

" . . . .

"(C) the 180th day following the filing of a petition with the Equal Employment Opportunity Commission under subsection (b)(1) of this section, there is no final agency action under subsection (b), (c), or (d) of this section;

"an employee shall be entitled to file a civil action to the same extent and in the same manner as provided in section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c))...."

Essentially, the 180–day provision allows the claimant to appeal to the district court if there has not been final agency action on his claim after six months from filing the claim with the agency. The claimant does not have to file in federal court at this time, but can choose to wait for a final determination. If the agency renders a final decision after the 180 days, but before the claimant has filed in district court, then the thirty-day filing limitation is triggered.

In supplemental briefs on appeal, the government asserts that the "no decision" provision in the regulations, 29 C.F.R. § 1613.421(i), quoted

well-settled that agency regulations must be consistent with applicable statutory provisions. *Spears v. Merit Sys. Protection Bd.*, 766 F.2d 520, 523 (Fed.Cir.1985); *Marshall v. Gibson's Products, Inc.*, 584 F.2d 668, 677–78 (5th Cir.1978). Despite the government's contention that we should construe the regulatory provision to mean something other than what is provided for in Title VII, we are compelled to interpret the regulation in accordance with Title VII because it is the governing statute. Therefore, it is clear that Gomez can bring suit in federal court if there has been no final decision by the EEOC more than 180 days after the EEOC received his petition. Thus, the critical issue becomes whether the EEOC rendered a final decision as to Gomez's national origin claim by both rejecting it and severing it from the balance of the matters complained of by Gomez (handicap discrimination) in his challenge to his dismissal by appeal to the Board and petition for review to the EEOC.

## II. *Severance*

In Gomez's case the EEOC stated that they concurred with the Board on the national origin issue and that they could neither concur nor differ with the Board on the handicap discrimination issue. There-

fore, the EEOC stated that they were "referring the case" to the Board for additional evidence on the handicap issue.[14]

The Air Force asserts on appeal that the EEOC did not refer the entire original case to the Board, but rather the EEOC severed the national origin claim from the handicap claim, and only referred the handicap discrimination claim to the Board. Therefore, the national origin "case" was exhausted at the administrative level and the thirty-day limitations period in which to file a civil action was triggered. 42 U.S.C. § 2000e–16(c); 5 U.S.C. § 7702(e)(1); 29 C.F.R. § 1613.421(d). Gomez filed his national origin discrimination case more than thirty days after notice of the EEOC's "final" decision and, therefore, his appeal is untimely.[15]

Gomez argues in response that the EEOC is not allowed to sever the national origin discrimination claim from his original case. Accordingly, Gomez asserts that the EEOC did not render a final decision on his case, but rather referred his original case to the Board for additional evidence to supplement the record in accordance with the regulations. 29 C.F.R. §§ 1613.416(c) and (d). Therefore, Gomez argues, no final agency action has been taken on his case more than 180 days after he filed his peti-

in note 12, *supra*, refers to "any" decision, not necessarily a final decision, by the EEOC, the Board, or the Special Panel. Therefore, the government argues that because Gomez "did not file suit until after the EEOC had rendered its decision on his national origin claim ... the 180–day provision is inapplicable." But such a contorted view of the 180–day provision would in effect eviscerate what the statutes intend, which is to provide a six-month limit on final agency action and then leave it to the claimant to decide whether to wait longer for final agency action or to appeal to the district court. While this may entail a protracted appeals process, the agency can always speed matters up by rendering a final decision, thereby triggering the thirty-day limitations provision. The government's reading would have us interpret the provision as saying that as long as the agency reaches some kind of decision on some issue in a complaint after 180 days, but prior to the claimant filing in federal court, then the claimant loses his right to file in federal court until such point in the future, which theoretically could be forever, when the agency takes final action and triggers the thirty-day limitations provision. Title VII and the Civil Service Re-

form Act clearly do not warrant such an interpretation, nor does the relevant legislative history. *See Doyal v. Marsh*, 777 F.2d 1526, 1537 (11th Cir.1985) (discussing H.R. Conf. Rep. No. 95–1717, 95th Cong., 2d Sess. 141–42, *reprinted in* 1978 U.S.Code Cong. & Ad. News 2723, 2860, 2875, which discusses the eight times an employee may file in civil court—one of those being 180 days after a *final* agency decision). *Cf. Ballard v. Tennessee Valley Authority*, 768 F.2d 756, 759 (6th Cir.1985) (interpreting "decision" as a final decision in another relevant part of the regulations).

14. This was in accordance with the regulations, which allow the EEOC to ask the Board to supplement the record prior to the EEOC's decision on the entire record. *See* 29 C.F.R. §§ 1613.416(c) and (d).

15. Although Gomez has not sought review of his handicap claim in federal court, it is clear that he could currently seek review of this claim because it is undisputed that *no* decision has been reached by the EEOC on this issue more than 180 days after Gomez petitioned the EEOC for review. 29 C.F.R. § 1613.421(i).

tion with the EEOC and he is entitled to appeal his national origin claim to federal court. 42 U.S.C. § 2000e–16(c); 5 U.S.C. § 7702(e)(1)(C); 29 C.F.R. § 1613.421(i).

■ The question of the EEOC's severance power presents this court with an issue of first impression. It is clear that district courts, pursuant to Rule 21, have the power to sever claims and have the claims proceed separately. Fed.R.Civ.P. 21 (1988). And this Court has held that where the power to sever exists and a severance has been ordered, with a final judgment then rendered disposing of one of the severed cases, the other remaining undisposed of, the time for appeal of the disposed-of case runs from the entry of the judgment therein, *notwithstanding* that the severance may have been erroneous. *United States v. O'Neil,* 709 F.2d 361, 370 (5th Cir.1983).[16] Thus, an improper severance by the EEOC, where the EEOC has the power to sever, would still require Gomez to file within thirty days of the final decision of the EEOC on his national origin claim.

■ Because of the novelty of the severance issue in mixed cases, we look for guidance to the statutory and regulatory framework, analogous precedent, and to the EEOC itself. There is no express statutory or regulatory provision, analogous to Rule 21, permitting the EEOC to sever claims in mixed cases. But as the Air Force correctly points out, there is also no provision expressly prohibiting severance by the EEOC in mixed cases. However, the statute and regulations, taken as a whole, establish a framework that encourages treating Gomez's appeal to the Board and petition for review to the EEOC as a single, nonseverable unit throughout the administrative appeals process. *See* 29 C.F.R. §§ 1613.281, 1613.416; *see also* 5 U.S.C. § 7702(a)(1)(B) (explicitly requiring the Board to decide both discrimination and nondiscrimination issues before the case proceeds to the next level of appeals); *Christo,* 667 F.2d at 884 (same); *Williams,* 715 F.2d at 1490–91 (finding that policy considerations support a unitary appeal, as opposed to a bifurcated treatment, in mixed cases).

First, the regulations provide that when an employee is acting under the authority of Title VII, as Gomez is doing, the decision of an agency will be final only when the agency makes a determination on all of the issues in the complaint, including whether or not to award attorneys' fees or costs. 29 C.F.R. § 1613.281.[17] Because the next level of appeal in the chain of potential administrative or judicial appeals is triggered by the preceding agency's final decision, and finality requires resolution of all the issues in a complaint, the statutes and regulations encourage maintaining the case as a single unit throughout its duration.

In addition, the regulatory provisions regarding the possible courses of action by the EEOC, when fairly read, envision treating the case as a unitary action. *See* 29 C.F.R. § 1613.416. Severing at the EEOC stage would create two separate administrative units, whereby one unit becomes immediately appealable to the district court and the other returns to the Board for

---

**16.** It is also well-settled that federal district courts, pursuant to Fed.R.Civ.P. 54(b), have the power to render a fully adjudicated claim in a case "final" for purposes of appeal, while other, separate unresolved claims remain at the district court level for further proceedings. Rule 54(b) does not create two separate actions as Rule 21 does, but rather entitles the claimant to an expedited appellate review of a finally-decided, discrete claim in a single suit, even though other claims therein remain unresolved. Fed.R. Civ.P. 54(b); *see O'Neill,* 709 F.2d at 368; *Sidag Aktiengesellschaft v. Smoked Foods Products Co.,* 813 F.2d 81, 84 (5th Cir.1987). Neither party contends that the EEOC action was analogous to a Rule 54(b) certification. We are aware of nothing in the relevant statutes, regulations, in-

terval operating procedures, or past practice of the EEOC suggesting that it has any power analogous to that provided for in Rule 54(b), nor has either party called to our attention anything claimed to give the EEOC such power, or contended that the EEOC has such power (or even purported to exercise it here). Accordingly, we do not specifically address that matter.

**17.** Section 1613.281 defines finality in Title VII cases as stated in the text above. Because mixed cases are filed pursuant to Title VII, the above "finality" regulation applies to the present case. *See Tolliver v. Deniro,* 790 F.2d 1394, 1396 (9th Cir.1986).

further administrative processing. That action would then become appealable to the district court thirty days after it was finally decided or 180 days after filing with the EEOC if no final action was taken. 29 C.F.R. § 1613.416; 5 U.S.C. § 7702 *et seq.* Such piecemeal resolution of a claimant's original complaint does not square with the above cited statutory provisions and is contrary to what the courts have done, under their severance powers, in other mixed cases.

■ In mixed cases that contain both discrimination and nondiscrimination claims, and therefore may typically present a stronger case for severance then one involving only discrimination claims, the courts have refused to countenance severance of the claims. *See Hayes v. United States Gov't Printing Office,* 684 F.2d 137, 138–140 (D.C.Cir.1982) (finding that claimant had to bring his mixed case complaint to the district court as a single unit and could not sever his discrimination claim for review by the EEOC and have his nondiscrimination claim heard in federal court); *Williams,* 715 F.2d at 1487 (finding that Court of Appeals for the Federal Circuit did not have the power to bifurcate mixed case appeals into nondiscrimination cases [for federal appeals court review] and discrimination cases [for federal district court review]); *Wiggins,* 653 F.2d at 221 (same); *Doyal v. Marsh,* 777 F.2d 1526, 1535–37 (11th Cir.1985) (stating that any mixed case should be treated as a single unit and the entire case is properly brought before the district court); *Christo,* 667 F.2d at 882 (same).

These cases are distinguishable from the present case insofar as they deal with federal courts' decisions regarding jurisdiction and severance in situations where there are mixed cases with both nondiscrimination and discrimination claims.[18] *See, e.g., Williams,* 715 F.2d at 1489; *Wiggins,* 653 F.2d at 221. The instant case requires our review of whether the EEOC has severance power in a mixed case that alleges only discrimination grounds. While the factual patterns are distinct, many of the underlying reasons for nonbifurcation also apply to the present case. Severance would require simultaneous pursuit of relief through both the administrative and judicial channels on issues that often would require an investigation into the same facts. Also, the district courts would have to entertain multiple suits involving repetitious fact patterns over protracted periods of time. Both of these results potentially entail an unnecessary waste of judicial resources.[19] *Cf. Williams,* 715 F.2d at 1489 (stating that bifurcation of one case between district and appeals courts wastes judicial resources and forces each court to consider the case in the absence of some claims that may be dispositive); *Wiggins,* 653 F.2d at 222 (same). Additionally, in the absence of a strong reason for severance, severance might burden the claimant with unnecessary litigation costs.[20]

The statutory and regulatory framework and the available case law, while suggesting a unitary approach to Gomez's case, do not necessarily foreclose severance by the EEOC. As a federal court, we generally accord deference to an agency's administrative decisions, rule-making, and operating procedures, as well as to their interpretations of the governing statute. *See, e.g., United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 106 S.Ct. 455,

---

**18.** Cases that allege only nondiscrimination claims are within the exclusive jurisdiction of the Court of Appeals for the Federal Circuit. 28 U.S.C. § 1295 (1982); *see also Williams,* 715 F.2d at 1487 (discussing mixed and nonmixed cases and the federal courts' jurisdiction with regard to both types of cases).

**19.** While severance by the EEOC in discrimination-only "mixed cases" would lead to protracted, piecemeal resolution of the claimant's original case at the district court level, it would not lead to the two-track federal court review problem found in mixed cases with discrimination and nondiscrimination claims. Thus, at least, inconsistent opinions between the federal courts would not result from EEOC severance.

**20.** Severance would allow the claimant a quicker appeal than nonseverance, but the 180-day "no final action" provision assures the claimant that he will not have to wait indefinitely. The drain on judicial resources and increased costs clearly outweigh the claimant's expedited access to federal court.

461, 88 L.Ed.2d 419 (1985) ("[a]n agency's construction of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with the expressed intent of Congress"); *American Trucking Assoc. v. L.C.C.*, 722 F.2d 1243, 1248 (5th Cir.1984) (stating that "[e]ven if an agency's interpretation would not be the one we would adopt if looking at a statute completely afresh, we ordinarily accept that agency's interpretation of its own statute if the interpretation 'has a reasonable basis in law' "). In the present case, we requested supplemental briefs addressing the EEOC's posture with regard to its power to sever in cases generally or in mixed cases. The briefs did not supply us with any evidence to support the power to sever. The Air Force did not refer to any other instances where the EEOC has severed cases, nor did they refer to any EEOC regulation, rule, standard operating procedure, internal memoranda, or other indicia of the EEOC's position with regard to its having, or having exercised, the power to sever in cases generally or in mixed cases.

We do not mean to suggest that the EEOC could not (or could) adopt a severance procedure in "mixed cases" where only discrimination claims are alleged. Rather, we merely find that in the absence of any prior notice or indication on the part of the EEOC that it may utilize a severance procedure, we hesitate to recognize such a power on its part. Indeed, the EEOC order itself never stated that it was severing Gomez's national origin claim, but rather merely stated that the EEOC was "referring [Gomez's] case" to the Board for supplemental evidence on the handicap issue. This language implies that the EEOC was acting pursuant to 29 C.F.R. § 1613.416(c) and (d), before rendering a final decision on Gomez's original entire petition for review under section 1613.416(c). Finding severance, when there is nothing in the record to support the idea that the EEOC utilizes severance in mixed cases (or in cases generally) or that they actually purported to

sever in this case, would require a level of after-the-fact judicial improvisation that we are not willing to reach. It would also result in injustice to the claimant who could have had no prior knowledge of such a practice. *See, e.g., Morton v. Ruiz*, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Castillo v. Army & Air Force Exchange Service*, 849 F.2d 199, 202 (5th Cir. 1988) (stating that it is arbitrary and contrary to the APA for an agency to depart from its own procedures without sufficient reason).

### Conclusion

In the absence of clear direction from the EEOC, and in light of the statutory and regulatory framework suggesting a unitary approach, as well as the unitary approach taken by the courts in a partially analogous area, we find that Gomez's national origin claim was not severed from the balance of his original appeal to the Board and his petition for review to the EEOC, and that therefore the EEOC's action with respect to the national origin claim (as well as with respect to the balance of Gomez's appeal to the Board and petition to the EEOC) was not final for purposes of the thirty-day suit limitations period. Because there has been no final agency action on Gomez's case more than 180 days after he filed his petition with the EEOC, we find that his case was timely filed with the district court and accordingly we reverse and remand for proceedings consistent with this opinion.[21]

REVERSED AND REMANDED.

---

**21.** We note that as a consequence of our holding it would appear that if Gomez does not (on remand) amend his district court suit to include his handicap discrimination claim, disposition of the suit on the merits may bar him from subsequent complaint respecting the handicap discrimination claim.