NEWMAN, Circuit Judge,
dissenting.
The district court dismissed this complaint on the pleadings under Fed.R.Civ.P. *1327 12(c), thereby denying the patentee the opportunity to litigate infringement of its U.S. Patent No. 5,569,652 before the defendants market their generic counterpart of the Yasmin® product. My colleagues err in endorsing this dismissal, which is contrary not only to the Federal Rules and judicial precedent, but also to the premises of FDA generic drug practices and to the purposes of the Hateh-Waxman Act.
Motions for judgment on the pleadings pursuant to Rule 12(c) are considered under the same standards applicable to Rule 12(b)(6). King v. Am. Airlines, Inc., 284 F.3d 352, 356 (2d Cir.2002). Pleading standards are a matter of regional circuit law. See CoreBrace LLC v. Star Seismic LLC, 566 F.3d 1069, 1072 (Fed.Cir.2009) (“The question ... whether a Rule 12(b)(6) motion was properly granted is a purely procedural question not pertaining to patent law, to which this court applies the rule of the regional ... circuit”). Review of the substantive patent law embodied in the pleadings is, however, in accordance with the law of this court.
The district court held, on the pleadings as a matter of law, that the generic counterpart of the Bayer product, brand name Yasmin®, does not infringe the '652 patent. My colleagues on this panel affirm, on the theory that some of the claimed properties of the Yasmin® product are not covered by the FDA-approved label, in part because these properties are stated in a different part of the label. The FDA-approved label for Yasmin® recites use as an oral contraceptive in the section headed “Indications and Usage,” and recites the properties of anti-androgenic activity (acne control) and anti-mineralocorticoid activity (diuretic effect) in the “Clinical Pharmacology” section. The '652 patent recites these three effects in the same claim.
The court holds that the listing of some of the Yasmin® properties in the Clinical Pharmacology section of the FDA label, instead of the Indications and Usage section, removes the generic counterpart of the Yasmin® product from the scope of the '652 claims. That ruling is in error, for the portion of the FDA label in which a product’s properties are described is irrelevant to whether the patent is infringed by sale or use of the product. The court also finds, albeit incorrectly, that “the label, taken in its entirety, fails to recommend or suggest to a physician that Yasmin is safe and effective for inducing the claimed combination of effects in patients in need thereof,” maj. op. 1324, and holds that this also requires non-infringement on the pleadings, as a matter of law. Neither the district court, nor this court, conducted a standard infringement analysis.
The infringement question is whether sale or use of the generic equivalent of the Yasmin® product, in accordance with the representations in the ANDA with respect to FDA approval for the generic equivalent of Yasmin®, infringes the '652 patent. FDA approval is embodied in the approved label for the Yasmin® product. The court concentrates on the inclusion of the anti-androgenic and anti-mineralocorticoid activity in the Pharmacodynamics section of the label instead of the Indications and Usage section. The purpose of the Pharmacodynamics section is to describe “[i]mportant pharmacologic effects other than the main desired effect” of the drug product. See FDA Draft Guidance for Industry: Clinical Pharmacology Section of Labeling for Human Prescription Drug and Biological Products—Content and Format, cited at Rep. Br. 10. The court now propounds the theory that the FDA label for Yasmin® is required to include specific dosages for the anti-androgenic and antimineralocorticoid effects in the same section of the label as “the main desired effect,” in order for the patent to be infringed. Maj. op. at 1325 (“The Dosage and *1328 Administration section of the label specifically describes the use of the Yasmin ‘[t]o achieve maximum contraceptive effectiveness’; it contains no discussion of the dosage required to achieve a therapeutic level of anti-mineralocorticoid effect. Even if knowing that drospirenone is a spironolactone analogue were all the information a physician would need to induce a desired therapeutic effect, the label contains no information regarding the safety of the drug in a patient needing such an effect.”). I can’t tell whether the court is holding that the FDA label is fatally flawed, but even if the FDA were somehow remiss (I discern no evidence thereof), this does not render ineffective the patent directed to the combination of these three effects, all of which are set forth in the FDA label for which the generic producers have filed their ANDAs. The placement of these effects in the FDA-approved label does not immunize the identical generic counterpart from infringement.
The FDA’s mission is to “protect public health by ensuring that ... drugs are safe and effective.” 21 U.S.C. § 398(b). In FDA v. Brown and Williamson Tobacco Corp., 529 U.S. 120, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000), the Court explained that:
Viewing the FDCA [Food, Drug, and Cosmetic Act] as a whole, it is evident that one of the Act’s core objectives is to ensure that any product regulated by the FDA is “safe” and “effective” for its intended use.... This essential purpose pervades the FDCA.... The FDCA requires premarket approval of any new drug, with some limited exceptions, and states that the FDA “shall issue an order refusing to approve the application” of a new drug if it is not safe and effective for its intended purpose.
529 U.S. at 133-34,120 S.Ct. 1291.
The panel majority is incorrect in its statement that the safety and efficacy of the anti-androgenic and anti-mineralocorticoid effects were never reviewed by the FDA. Maj. op. at 1324 (“Absent that finding [by the FDA] of safety and efficacy, and the recognition of such safety and efficacy on the Yasmin label, the Yasmin label cannot instruct (and the ANDA proposed label cannot induce infringement of) the method of use claimed in the '652 patent.”). The Clinical Pharmacology section of the Yasmin® label discusses these effects of the active ingredient drospirenone: “Drospirenone is a spironolactone analogue with anti-mineralocorticoid activity.... Preclinical studies in animals have also shown that drospirenone has antiandrogenic activity.”
The record contains, among other evidence, the expert declaration of Dr. Allen, FDA past Director of the Division of Reproductive and Urologic Drug Products, that these effects were demonstrated when Yasmin® was presented for FDA approval. Dr. Allen states:
Each of the three effects identified in Claim 11 of the '652 Patent are listed in the professional labeling for Yasmin® .... The inclusion of statements describing these three effects in the FDA-approved labeling means that the FDA approved (a) the therapeutic effect (contraceptive) and (b) the two additional pharmacological effects (anti-androgenic and anti-mineralocorticoid) of Yasmin®.
When the FDA approved the Yasmin® NDA, it “concluded that adequate information has been presented to demonstrate that the drug product is safe and effective for use as recommended in the agreed upon enclosed labeling test.” FDA Approval Letter (May 11, 2001). Dr. Shulman, a leading obstetrician-gynecologist with extensive experience in oral contra *1329 ceptive research and clinical use, stated in his declaration that prescriptions of Yasmin® as an oral contraceptive with intent to produce the two further pharmacological effects are “on-label,” and that he prescribes Yasmin® for these additional pharmacological effects. Dr. Shulman stated:
The physician labeling for Yasmin® contains the data supporting the use of Yasmin® in the treatment method of claim 11 of the '652 patent.... Because drospirenone has anti-mineralocorticoid activity as disclosed in the Clinical Pharmacology section, the prescription of Yasmin® as an oral contraceptive with the intent to produce an anti-mineralocorticoid pharmacological effect is clearly stated and on-label.... Because drospirenone has anti-androgenic activity, the prescription of Yasmin® as an oral contraceptive with the intent to produce an anti-androgenic pharmacological effect is clearly stated and on label.... I have prescribed Yasmin® for premenopausal women in accordance with claim 11 of the '652 patent, continue to do so, and consider such prescriptions to be on-label.
In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court cautioned that “Rule 12(b)(6) does not countenance ... dismissals based on a judge’s disbelief of a complaint’s factual allegations.” 550 U.S. at 556, 127 S.Ct. 1955 (quoting Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)). Bayer has sufficiently alleged that an “intended use” for Yasmin®, as approved by the FDA, is the simultaneous treatment of all three effects. The majority’s statement at n. 1 that Yasmin® “has not been found safe and effective” is contrary to the record.
All of the defendants state in their ANDAs that their product is identical to the Yasmin® product and that the biological effects are identical, with no carve-outs from the methods and uses set forth on the FDA label. Contrary to representations made on this appeal, defendant San-doz described Yasmin® to the district court as “the only drug that combines the properties of oral contraception, anti-mineralocorticoid (antialdosterone), and anti-androgenic properties, which cause exceptional control of acne and greatly reduced fluid retention.” J.A. 1212. Sandoz stated that “[n]o other product offers this combination of therapeutic properties and contraception.” J.A. 1216.
The evidence before the district court, presented in response to this motion, supported the statement in Bayer’s complaint that a “significant proportion of drospirenone and ethinylestradiol prescriptions are written with the intent of producing three pharmacological effects—gestagenic, antialdosterone, and anti-androgenic.” Even were these threshold facts disputed—and they were not—it is improper for a court to make contrary findings under Rule 12(c). In considering a motion to dismiss, “the court is to accept as true all facts alleged in the complaint.” Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir.2007).
My colleagues hold that the '652 patent cannot be infringed, as a matter of law, unless the label specifically authorizes physicians to prescribe Yasmin® to treat acne or as a diuretic. Maj. op. at 1325. This criterion of infringement is as irrelevant as it is factually incorrect. Bayer states, and the record adduced on this motion supports, that “Bayer promoted the '652 patented method because Yasmin®’s unique pharmacological profile differentiated it from other oral contraceptives. The FDA pre-cleared advertising containing this promotion because it is consistent with Yasmin®’s FDA-approved labeling,” Rep. Br. 27. No contrary evidence is in the *1330 record. The adverse inferences drawn by the district court and the adverse findings made by this court are inappropriate as well as incorrect, for it is not disputed that all of the defendants seek approval of their Yasmin® counterpart on representations of chemical and biological identity to the approved Yasmin® product.
The infringement inquiry is whether the generic counterpart, when used in accordance with its proposed ANDA authorization, would infringe the patent. The Hateh-Waxman Act does not alter the inquiry into infringement. As summarized in Harman, Patents and the Federal Circuit 494 n. 161 (9th ed. 2009): “The inquiry under § 271(e)(2) is a standard infringement test. The only difference is that the allegedly infringing drug has not yet been marketed and therefore the question of infringement must focus on what the ANDA applicant will likely market if its application is approved.” See also Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1366 (Fed.Cir.2003) (“The proper inquiry under § 271(e)(2)(A) is whether, if a particular drug were put on the market, it would infringe the relevant patent.”).
Whether a patent is infringed is a question of fact, and cannot be resolved on pleadings by adverse inference or assumption. Contrary to the theory of the panel majority, Warner-Lambert does not support this dismissal. In Warner-Lambert the patented neurodegenerativo use was not the label-approved use, and was not the use for which the ANDA was submitted. 316 F.3d at 1364 (“In the absence of any evidence that Apotex has or will promote or encourage doctors to infringe the neurodegenerativo method patent [for the “off-label” use], there has been raised no genuine issue of material fact.”). In contrast, for Yasmin® it is not disputed that the three properties recited in the patent claim are coextensive with the FDA-approved label. Bayer’s complaint, and the several declarations provided in response to this motion, show that the FDA so recognized, and also show that physicians prescribe Yasmin® for this combination of effects. The court errs in ruling as a matter of law that the FDA-approved label for Yasmin® does not encompass the three effects stated in the label and claimed in the '652 patent. Bayer’s complaint contains well pleaded and well-supported factual allegations, and states a plausible claim of infringement. The complaint “statefs] a claim for relief that is plausible on its face.” Twombly, 550 U.S. at 570, 127 S.Ct. 1955.
This appeal is from dismissal and judgment on the pleadings. However, a plaintiffs nonconclusory factual allegations must be taken as true at this stage. See Swierkiewicz v. Sorema N. A, 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (on a motion to dismiss, the court “must accept as true all of the factual allegations contained in the complaint.”). These firm premises are reinforced in Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Yet the court discounts Bayer’s factual allegations, creating adverse inferences unrelated to either FDA approval or the criteria of infringement. See Allergan, Inc. v. Alcon Labs., Inc., 324 F.3d 1322, 1331 (Fed.Cir.2003) (“a court must employ a traditional infringement analysis, focusing on all elements of infringement”). The court in Allergan explained once again that the “only difference in the analysis of a traditional infringement claim and a claim of infringement under section 271(e)(2) is the time-frame under which the elements of infringement are considered.” Id.
Bayer is entitled to the opportunity to resolve patent infringement at the Hateh-Waxman stage. Dismissal of the complaint was contrary to the premises of the *1331 Federal Rules, and contrary to the purposes of the Hatch-Waxman Act. I respectfully dissent.